IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GUY DON MINZE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:17-cv-2320-L-BT |
| | § | |
| ADAM KING, ABEL FLORES, | § | |
| and JESSICA PORTER, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are separate Rule 12(b) motions to dismiss filed by Defendants Abel Flores and Jessica Porter (ECF No. 21) and Defendant Adam King (ECF No. 30). Also pending before the Court is Defendant King's Motion to Deem Defendant's Motion to Dismiss as Unopposed (ECF No. 49). For the reasons stated, Defendant King's Motion to Deem Motion to Dismiss as Unopposed should be DENIED, and both Rule 12(b) Motions to Dismiss should be GRANTED in part and DENIED in part.

### Background

This is a *pro se* prisoner civil rights case brought by Plaintiff Guy Don Minze against Adam King, Sheriff of Johnson County, Texas, and Abel Flores and Jessica Porter, employees of LaSalle Southwestern Corrections working at the Johnson County jail in Cleburne, Texas. Plaintiff's claims arise out of an incident that occurred on September 9, 2015, when Plaintiff was being held as a pretrial

1

detainee at the Johnson County jail. On August 31, 2017, Plaintiff tendered a Complaint (ECF No. 3) to the Clerk of Court and filed an application to proceed *in forma pauperis* ("IFP"). The Court granted Plaintiff's IFP application and directed the United States Marshal Service ("USMS") to effect service on Defendants. *See* Orders (ECF Nos. 7, 8).

By his original Complaint, which is the live pleading in this action, Plaintiff alleges Defendant King gave a statement, on or about September 5, 2015, to a local newspaper concerning Plaintiff's arrest by Johnson County law enforcement officers. *Id.* at 6. An unnamed corrections officer at the Johnson County jail gave a copy of the local newspaper with an article containing King's statement to inmates housed with Plaintiff at the prison. *Id.* The article allegedly incited "multiple group 'gang style' assaults" on Plaintiff by other inmates, on September 9, 2015. *Id.* The beatings left Plaintiff with a collapsed lung, broken ribs, a brain hemorrhage, and other injuries. *Id.*

Plaintiff further alleges that, following the September 9, 2015 incident, a duty nurse at the jail informed Defendant Flores that Plaintiff was "cough[ing] up large chunks of blood," and the nurse believed Plaintiff had "life threatening injuries" and would die without immediate emergency medical services. *Id.* at 8. Defendant Flores refused to allow the nurse to call an ambulance for Plaintiff, and instead left Plaintiff unattended in a wheelchair for two hours. *Id.* at 8. Plaintiff alleges that during those two hours, he begged Flores for help, but Flores ignored his pleas and forced him to suffer "excruciating pain." *Id.* at 9. Plaintiff

2

was eventually taken to the hospital, where emergency surgery was performed to insert a chest tube before Plaintiff was transported by helicopter to an intensive care unit. *Id.* at 9-10.

Plaintiff was released from the hospital on September 13, 2015. *Id.* at 11. Plaintiff alleges that Defendant Porter received his complete medical records and specific care instructions from the doctors who treated Plaintiff at the hospital, but that Porter ignored all of the doctor's orders. *Id.* at 11, 12. Plaintiff allegedly received no medical treatment for two and half days and never received any medication while he remained at the Johnson County jail. *Id.* On September 15, 2015, Plaintiff was transferred from the Johnson County jail to the Jack Harwell Detention Center ("JHDC")—his current place of incarceration. *Id.* Plaintiff alleges that Defendants did not provide personnel at the JHDC with any of his medical records. *Id.*

Plaintiff also alleges that Defendant King, as part of his campaign for Johnson County Sheriff in March of 2016, posted to Facebook the statement King gave to the local newspaper about Plaintiff in 2015. *Id.* at 7. This republication allegedly damaged Plaintiff's "personal and business credibility" as well as his "standing in the public eye" and caused Plaintiff financial harm, in the form of a loss of "personal and business viability, future earnings, and financial securities long-term" and "damage to Plaintiff's . . . credit and account balances." *Id.*

Based on this conduct, Plaintiff asserts claims against Defendant King for libel, defamation, slander, misfeasance in public office, malfeasance in public

office, gross negligence, and violations of his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments. *Id.* at 4. Plaintiff also asserts claims against Defendants Flores and Porter (collectively, the "LaSalle Defendants") for "life endangerment, gross negligence, inhumane treatment, denied right to medical care, ignored serious medical needs, deliberate indifference, cruel and unusual punishment, medical neglect," and violations of his Eighth Amendment rights. *Id.* Plaintiff further asserts claims for nonfeasance and misfeasance against Defendant Flores. *Id.* Plaintiff seeks a total of $201,900,000 in monetary damages from all three defendants. *Id.* at 5.

The LaSalle Defendants and Defendant King filed separate motions to dismiss in November of 2017. Plaintiff did not file a timely response to either of these motions, and on April 19, 2018, the Court ordered Plaintiff to file separate responses to both motions by May 21, 2018. *See* ECF No. 39. On May 18, 2018, Plaintiff filed his response to the LaSalle Defendants' motion (ECF Nos. 42, 43), and the LaSalle Defendants filed a reply (ECF No. 45) on June 4, 2018. Plaintiff never filed a response to Defendant King's motion. Accordingly, the Court will consider Defendant King's motion without the benefit of a response.

## Preliminary Considerations

As an initial matter, Defendant King moves the Court to deem his Motion to Dismiss unopposed and grant the motion, dismissing Plaintiff's claims with prejudice. Defendant King filed his first motion to dismiss (ECF No. 17) on October 27, 2017. He later filed an amended motion (ECF No. 24) on November

13, 2017 and, with leave of Court, the currently pending Second Amended Motion to Dismiss (ECF No. 30) on November 27, 2017. Plaintiff never filed any kind of response to any of Defendant King's motions to dismiss. In April 2018, the Court ordered Plaintiff to file a written response to Defendant King's Second Amended Motion to Dismiss by May 21, 2018. To date, Plaintiff has not filed a response to Defendant King's pending motion to dismiss or otherwise answered any of Defendant King's arguments for dismissal, although Plaintiff did request an extension of time to file a response to Defendant King's first amended motion to dismiss. *See* Mot. (ECF No. 25).

When an opposing party fails to respond to a motion requiring a response, the Court may deem the motion unopposed. But, that lack of opposition does not result in the Court automatically granting the motion or, in the case of a dispositive motion, dismissing the plaintiff's claims with prejudice, without regard to the merits of the case. *See, e.g., Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (reviewing merits of plaintiff's underlying claim for injunctive relief on appeal of dismissal of plaintiff's claims notwithstanding district court's observation that defendant's motion to dismiss could be deemed as unopposed by plaintiff's failure to respond); *cf. Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (holding that a plaintiff's failure to respond to a summary judgment motion does not permit the court to enter a "default" summary judgment).

In this case, Plaintiff never filed a response to Defendant King's pending motion to dismiss. However, the Court cannot infer from this failure to respond that Plaintiff does not oppose the relief requested. In the interest of justice, the Court should DENY Defendant King's Motion to Deem Motion to Dismiss as Unopposed (ECF No. 49) and consider Defendant King's Motion to Dismiss on the merits.

## Legal Standards and Analysis
### Rules 12(b)(2), 12(b)(4) and 12(b)(5)

All three Defendants argue that Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(2), (4), and (5), because Plaintiff failed to properly serve any of them, which deprives the Court of personal jurisdiction. Defendant King previously waived proper service. *See* Mot. to Set Deadline to File Responsive Pleading 2, 3 (ECF No. 14) ("Defendant King wishes to waive proper service[.]") Therefore, Defendant King is not entitled to dismissal on this ground. The Court comes to a similar conclusion with respect to the LaSalle Defendants, but for a different reason.

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for the dismissal of actions where there is a lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "Generally speaking, [a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service, while a Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint." *Gartin v. Par Pharmaceutical Companies, Inc.,* 289 F.

App'x. 688, 695 n. 3 (5th Cir. 2008) (citation omitted). Absent proper service of process, the court cannot exercise personal jurisdiction over a party named as a defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).

The Federal Rules of Civil Procedure require that the plaintiff serve the summons and a copy of the complaint upon the defendants within 90 days after the complaint is filed. Fed. R. Civ. P. 4(c)(1), 4(m). In this case, Fed. R. Civ. P. 4 required Plaintiff to serve Defendants by following Texas law for serving a summons in a Texas case; by delivering a copy of the summons and of the complaint to the individual personally; by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or, by delivering a copy of each to an agent authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(e). None of those things occurred in this case. Rather, the USMS served the summons for the LaSalle Defendants on "Regina Hopkins (Human Resources)" at the Johnson County jail, which was the address provided by Plaintiff.[1] *See* Return [ECF No. 11]; *see also* Pl. Compl. 3 [ECF No. 3] (identifying Johnson County jail as Defendant Flores and Porter's place of employment and giving jail address as Defendants' mailing address). A defendant's place of

---

[1] Although both returns state that the summons were left "at the individual's residence or usual place of abode," the address on the summons is the jail's address. *See* Summons [ECF Nos. 11]. The Court takes judicial notice of the address for the Johnson County Corrections Center. Fed. R. Evid. 201. *See* http://johnsoncountytx.org/public-safety/sheriff-s-office/jail-division.

employment does not qualify as his or her "abode" or "dwelling," and service at a defendant's place of employment is insufficient under Rule 4. *See Allen v. Travis*, 2007 WL 1989592, at *8 (N.D. Tex. July 10, 2007); *Cross v. City of Grand Prairie*, 1998 WL 133143, at *6 (N.D. Tex. Mar. 17, 1998). The USMS did not serve Defendant Flores or Porter in person, at home, or in any other manner permitted by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(e). Nor did service by the USMS comply with Texas law, which permits service in person or by certified or registered mail. Tex. R. Civ. P. 106(a). The USMS did not serve the LaSalle Defendants by mail.

Plaintiff does not dispute that service was not proper. Instead, he argues that, as a *pro se* litigant incarcerated in a Texas prison, he has limited resources available to him to discover and correct defective service. *Pro se* litigants are expected to comply with the rules of pleading and the rules of service. *See Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). However, "a plaintiff proceeding *in forma pauperis* is entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the Marshal's Service to properly effect service of process, where such failure is through no fault of the litigant." *Triplett v. LeBlanc*, 642 F. App'x. 457, 459-60 (5th Cir. 2016) (quoting *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). A *pro se* plaintiff bears the burden of proving the validity of service or good cause for failure to effect timely service. *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990). What amounts to "good cause" for failure to properly effectuate service of process

under any particular set of circumstances is necessarily fact-sensitive. *Lindsey v. U.S. R.R. Retirement Bd.*, 101 F.3d 444, 446 (5th Cir. 1996).

In this case, Plaintiff has been incarcerated since the September 9, 2015 assault giving rise to his claims. The Court granted Plaintiff leave to proceed IFP and directed the USMS to serve Defendants. In his Complaint, Plaintiff provided the USMS with the address of the Johnson County jail where the LaSalle Defendants were employed at the time of the assault—the only address for these Defendants that Plaintiff could discover. Plaintiff explains that, as a Texas prisoner proceeding IFP, he lacks the resources to discover Defendants' home addresses. Indeed, Plaintiff complains, it was difficult for him to discover the LaSalle Defendants' first names and job titles from the information available to him. That Plaintiff did not provide home addresses for these Defendants is not fatal to a finding of good cause. *Lindsey*, 101 F.3d at 447-48; *see also Ellibee v. Leonard*, 226 F. App'x 351, 359 (5th Cir. 2007) (per curiam) (noting that "it is unclear how [the plaintiff] could have obtained the defendants' addresses given that he was a prisoner").

When, as here, a plaintiff proceeds IFP, "[s]pecial rules govern the procedure for service of process." *Id.* at 446. After an IFP plaintiff takes "reasonable steps to identify the defendant(s)," the Court issues process and directs the USMS to serve the defendants. *Id.* An "inmate need furnish 'no more than the information necessary to identify the defendant.'" *Rice v. MgBakor*, 2008 WL 4791660, at *2 (N.D. Tex. Oct. 29, 2008) (Lindsay, J.) (quoting

*Antonelli v. Sheahan*, 81 F.3d 1422, 1426 (7th Cir. 1996); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990)). The USMS must use due diligence in serving the defendants on behalf of an IFP plaintiff. *Id.* If the USMS is provided with a business address that is insufficient for service upon a prison employee, due diligence requires the USMS to search for personal addresses for the defendants and serve the individuals at those addresses. *Id.* (citing *Ellibee*, 226 F. App'x at 359). In this case, the USMS made only one attempt at service, which was deficient. The USMS did not exercise due diligence to search for personal addresses for the LaSalle Defendants, and the Court did not direct the USMS to do anything differently when the LaSalle Defendants first raised the issue of insufficient service in October 2017. *See* Mot. (ECF No. 15).

In view of the circumstances, the Court finds Plaintiff's failure to properly serve the LaSalle Defendants was the fault of the USMS and the Court. The Court thus finds that Plaintiff has made a sufficient showing of good cause for the defects in service. Accordingly, the Court should DENY the LaSalle Defendants' Motion to Dismiss, to the extent it is based on Fed. R. Civ. P. 12(b)(2), (b)(4) or (b)(5).

Further, the Court should, in the exercise of its discretion, extend the period for effecting service of the summons and original complaint upon the LaSalle Defendants to the date which is 30 days after the Court enters an Order Accepting these Findings, Conclusions, and Recommendation. The Court should direct the USMS to use due diligence to search for personal addresses for each of

the LaSalle Defendants and to effect proper service before the expiration of the extended deadline. The LaSalle Defendants should be granted a similar extension of time to file their answers.

## Rule 12(b)(6)

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, Plaintiff's Complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has stopped short of showing that Plaintiff is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678.  When deciding a 12(b)(6) motion for failure to state a claim, the

court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007).

The Court's analysis of Defendants' Rule 12(b)(6) arguments is limited to the facts that were properly alleged in Plaintiff's Complaint. To the extent Defendants' objected to additional facts asserted in Plaintiff's response and to evidence submitted by Plaintiff in support of his response, *see* Obj. (ECF No. 47), those objections should be SUSTAINED.

## I.   Plaintiff's Fifth Amendment claims against Defendant King should be dismissed.

Plaintiff alleges that Defendant King violated his Fifth Amendment rights. Compl. 4. The Fifth Amendment applies only to actions of the United States or a federal actor and not to those of a municipal government or an individual. *Morin v. Caire,* 77 F.3d 116, 120 (5th Cir. 1996). Plaintiff does not allege anywhere in his Complaint that Defendant King was "acting under authority of the federal government," and therefore Plaintiff fails to state a claim for relief against Defendant King under the Fifth Amendment. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). The District Court should dismiss this claim against Defendant King.

## II.  Plaintiff's Eighth Amendment claims against all Defendants should be dismissed, but his deliberate indifference claim against the LaSalle Defendants survives.

Plaintiff alleges that all three Defendants violated his Eighth Amendment rights. Defendants all move to dismiss this claim on the ground that Plaintiff was a pretrial detainee at the time of the September 9, 2015 assault, and therefore Plaintiff was not entitled to Eighth Amendment protection. King's Mot. 16 ¶ 26; Defs.' Br. 17.  Plaintiff does not allege that he was a convicted prisoner on the date of the assault; nor does he dispute Defendants' assertion that he was, in fact, a pretrial detainee at time.

"The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to pretrial detainees such as the plaintiff[ ]." *Morin,* 77 F.3d at 120. Because Plaintiff does not allege that he was a convicted prisoner at the time of the assault giving rise to his claims, he cannot state a claim under the Eighth Amendment. Therefore, the District Court should dismiss this claim against all Defendants.

Although pretrial detainees are not protected by the Eighth Amendment, the Fifth Circuit has held that "'the State owes the same duty under the [Fourteenth Amendment's] Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement.'" *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996)). "Since the State does punish

convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Hare*, 74 F.3d at 639. (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Therefore, the Court interprets Plaintiff's purported Eighth Amendment claims against the LaSalle Defendants for "life endangerment," "inhumane treatment," "denied right to medical care," "ignored serious medical needs," "cruel and unusual punishment," "deliberate indifference," and "medical neglect" as claims arising under the Fourteenth Amendment.

Private corporations that contract with the state to house state prisoners, like LaSalle Southwestern Corrections, and their employees may be sued under § 1983. *Hagwood v. Salvation Army,* 2018 WL 2291406, at *2 (N.D. Tex. April 27, 2018) (citing *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (holding that private prison-management corporations and their employees are state actors under § 1983)). "To succeed in a § 1983 action based on 'episodic acts or omissions' in violation of Fourteenth Amendment rights, a pretrial detainee must show subjective deliberate indifference by the defendants." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (quoting *Hare*, 74 F.3d at 643). "[A] plaintiff must show that officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Perniciaro v. Lea*, ____ F.3d___, 2018 WL 3941607,

at *10 (5th Cir. 2018) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.

1985)). "To establish liability based on a delay in medical treatment, a plaintiff

must show deliberate indifference to serious medical needs that resulted in

substantial harm." *Alderson,* 848 F.3d at 422 (citing *Easter v. Powell*, 467 F.3d

459, 464 (5th Cir. 2006)). "The pain suffered during a delay in treatment can

constitute a substantial harm and form the basis for an award of damages." *Id.*

"Actions and decisions by officials that are merely inept, erroneous, ineffective, or

negligent do not amount to deliberate indifference." *Alderson,* 848 F.3d at 420

(quoting *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

　　　　In support of his Fourteenth Amendment claims, Plaintiff specifically

alleges that Defendant Flores refused to transport Plaintiff to a hospital

immediately after the September 9, 2015 assault, even though a nurse had

informed Flores that Plaintiff had sustained "life threatening injuries" and would

die without immediate emergency medical services. Compl. 8. Instead, Plaintiff

alleges, Defendant Flores left Plaintiff unattended in a wheelchair for two hours

and ignored his pleas for help, while Plaintiff suffered excruciating pain from his

injuries, including a collapsed lung. *Id.* As to Defendant Porter, Plaintiff

specifically alleges she failed to comply with any doctor's orders regarding

Plaintiff's treatment, did not provide Plaintiff with prescribed painkillers and

antibiotics, and failed to send Plaintiff's medical records to the JHDC. *Id.* 9, 11-

12.  Taken as true, these allegations are sufficient to state a claim for deliberate

indifference under the Fourteenth Amendment. *See Alderson*, 848 F.3d at 422

(holding allegations sufficient to state a claim for deliberate indifference where plaintiff alleged that, when he was incarcerated as a pretrial detainee, a jailhouse lieutenant refused for an hour to transport him to the hospital, despite plaintiff's entreaties following a vicious assault and, upon his release from the hospital, the jailhouse lieutenant refused to provide plaintiff with prescribed antibiotics and painkillers for a week).

Accordingly, the District Court should DENY the LaSalle Defendants' Motion to Dismiss as to Plaintiff's claim of deliberate indifference under the Fourteenth Amendment.

### III.   Plaintiff's Fourteenth Amendment claims should be dismissed against Defendant King.

The Court construes Plaintiff's Fourteenth Amendment claim against Defendant King as a claim for constitutional defamation. Defendant King moves to dismiss this claim on the ground of qualified immunity. Defendant King argues that Plaintiff cannot state a claim that King violated a clearly established constitutional right by making factually accurate statements to a newspaper. King's Mot. 20 ¶ 35.

Qualified immunity shields state officials from monetary damages. *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011). "When a defendant pleads qualified immunity, the plaintiff bears the burden of negating it." *Weisler v. Jefferson Parish Sheriff's Office*, ____ F. App'x. ____, 2018 WL 3031437, at *2 (5th Cir. 2018) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th

Cir. 2002). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "'The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would

have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right.'" *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

A constitutional defamation claim is "based on the notion that [plaintiff] has suffered stigma to his reputation, which has infringed upon his protected liberty interest." *Hux v. Shafer,* 2015 WL 3648570, at *16 (N.D. Tex. 2015) (citing *Paul v. Davis*, 424 U.S. 693, 709-12 (1976)). "An official who, as a part of his discretionary functions, is charged with making public statements would be unduly inhibited in the exercise of that duty if he were not afforded some degree of immunity for statements issued in the discharge of his duty." *Marrero v. City of Hialeah,* 625 F.2d 499, 511 (5th Cir. 1980). "Moreover, the strong public policy in favor of the free flow of information concerning the affairs of government and the apprehension of criminals supports the grant of a limited privilege, lest the public be deprived of significant information due to an official's reluctance to speak." *Id.* "Hence, to the extent [the defendant] made the statements to the press in the exercise of his discretionary duties, he is entitled to assert a qualified immunity defense." *Id.*

Here, Defendant King argues that his September 2015 statements were made as part of his discretionary functions as an employee of the Cleburne Marshal's Office and commander of the special crimes unit responsible for Plaintiff's arrest. King's Mot. 21 ¶ 39. Plaintiff did not respond to Defendant King's defense of qualified immunity. Thus, Plaintiff did not satisfy his burden of

negating the immunity defense, and Defendant King is entitled to dismissal of Plaintiff's Fourteenth Amendment claim.

### IV.   Plaintiff's Libel, Defamation, and Slander claims against Defendant King should be dismissed.

Defendant King moves to dismiss Plaintiff's libel, defamation, and slander claims on the grounds that the Texas Tort Claims Act ("TTCA") requires dismissal of these claims, and these claims are barred by limitations.

The statute of limitations for Plaintiff's defamation, libel, and slander claims is one year. Tex. Civ. Prac. & Rem. Code. § 16.002. "Texas courts have adopted the "single publication rule" in cases involving mass media publications." *Hamad v. Ctr. for Jewish Cmty. Studies*, 265 F. App'x 414, 416 (5th Cir. 2008) (citing *Williamson v. New Times, Inc.*, 980 S.W.2d 706, 710 (Tex. App. 1998)). Under this rule, "[t]he one-year limitations period begins to run when publication of the libelous statement is complete, which is the last day of the mass distribution of copies of the printed matter." *Nationwide Bi-Weekly Admin., Inc., v. Belo Corp.*, 512 F.3d 137, 142 (5th Cir. 2007) (internal citation and quotations omitted). Here, Defendant King's statements were made and published on September 5, 2015 and allegedly posted to Facebook in March of 2016. Plaintiff did not allege that the newspaper was republished at any other time. This means the statute of limitations on Plaintiff's claims expired on September 5, 2016 for the newspaper comments, or March of 2017 for the Facebook posting. Plaintiff

filed his complaint on August 31, 2017. Accordingly, Plaintiff's claims of defamation, slander, and libel should be dismissed as barred by limitations.

Defendant King also moves for dismissal of Plaintiff's libel, defamation, and slander claims under the Texas election of remedies statute. Specifically, Section 101.106(f) of the TTCA provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Defendant King argues that he was employed by the City of Cleburne in 2015, and that he made the statement of which Plaintiff complains in the scope of his employment as a law enforcement officer. As such, Plaintiff's claims should have been brought against the City of Cleburne. *See Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011).

## V.   Plaintiff's nonfeasance, malfeasance, and misfeasance claims against Defendant King and Defendant Flores should be dismissed.

Defendants King and Flores move to dismiss Plaintiff's nonfeasance, malfeasance, and misfeasance claims on the grounds that Plaintiff cannot state a claim and that these claims fail as a matter of law. To the extent that Plaintiff is attempting to bring claims under the Texas Local Government Code Section

22.009, this code only governs the removal of a public official from office, and does not provide an avenue for a private cause of action for damages. Plaintiff does not specify what facts in his complaint support these claims. Accordingly, Plaintiff's claims for nonfeasance, malfeasance, and misfeasance should be dismissed.

## VI.   Plaintiff's claim of gross negligence should be dismissed against Defendant King, but not the LaSalle Defendants.

"Gross negligence requires a showing of two elements: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed[s] in conscious indifference to the rights, safety, or welfare of others." *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (per curiam). The first element, "extreme risk," means a "likelihood of serious injury to the plaintiff." *Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (citing cases). The second element, "actual awareness," means that "the defendant knew about the peril, but [his] acts or omissions demonstrated that [he] did not care." *Id.*

### a. Defendant King

Defendant King moves to dismiss Plaintiff's gross negligence claim on the ground that Plaintiff did not allege sufficient facts to show King was grossly negligent in making statements to the local newspaper. King's Mot. 27 ¶ 60. In

order to state a gross negligence claim against King, Plaintiff must provide sufficient factual allegations to support his claim that King's statements involved an extreme degree of risk that Plaintiff would be harmed, and that King proceeded to make those statements with actual awareness of the risk to Plaintiff. Plaintiff did not allege that King knew his statements would in any way lead to an assault on Plaintiff by other inmates in the Johnson County jail. Plaintiff's allegations are not sufficient to allow the Court to draw a reasonable inference that Defendant King is liable for gross negligence. Accordingly, Plaintiff's gross negligence claim against Defendant King should be dismissed.

### b. The LaSalle Defendants

The LaSalle Defendants similarly move to dismiss Plaintiff's gross negligence claim on the ground that no plausible facts support Plaintiff's claim. Defs.' Br. 20. The Court disagrees. Plaintiff alleged in his Complaint that Defendant Flores, after being told by the on-duty nurse that Plaintiff was suffering from "life threatening injuries" and "would die without immediate emergency medical attention," left Plaintiff sitting in a wheelchair unattended for two hours, during which time Plaintiff "struggled to breath and suffered in excruciating pain" from his injuries. Compl. 8-9. Plaintiff also alleged that Flores refused to transport Plaintiff to the hospital for two hours after the attacks. Defendant Porter allegedly failed to comply with doctor's orders and did not provide Plaintiff with his prescribed medication, including painkillers. *Id.* at 11-12. These facts, when taken as true, sufficiently allege that the LaSalle Defendants

22

objectively risked serious harm to Plaintiff, and were aware of such a risk. *See* Alderson, 848 F.3d at 422-23 (holding that pain and suffering endured during a delay in medical treatment can be considered substantial harm). Accordingly, the District Court should deny the LaSalle Defendants' motion as to Plaintiff's gross negligence claims.

### Opportunity to Amend

The Fifth Circuit has recently affirmed that district courts should generally offer a *pro se* litigant at least one opportunity to amend his complaint before it is dismissed. *See Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). However, granting leave to amend is not required if the plaintiff has already pleaded his "best case." *Id.* "A plaintiff has pleaded [his] best case after [he] is apprised of the insufficiency of [his] complaint." *Id.* In this case, Plaintiff has been on notice of the deficiencies in his pleading since November 2017. With respect to his claims against Defendant King, Plaintiff never filed a response to any of the Motions to Dismiss and never gave the Court any indication that he could cure the defects identified in the motion. As to the LaSalle Defendants, Plaintiff similarly gave the Court no reason to believe that he could replead any of the challenged claims in a manner that would state a claim for relief. Plaintiff has never asked the Court for leave to amend.  Accordingly, the District Court should dismissed with prejudice all of Plaintiff's claims, except his

claims against the LaSalle Defendants for deliberate indifference and gross negligence.

## RECOMMENDATION

The Court should DENY Defendant King's Motion to Deem Motion to Dismiss as Unopposed (ECF No. 49). The Court should DENY Defendant King's Motion to Dismiss (ECF No. 30) under Fed. R. Civ. P. 12(b)(2), (4) & (5), but GRANT the Motion under Fed. R. Civ. P. 12(b)(6) and dismiss with prejudice all of Plaintiff's claims and causes of action against Defendant King.

The Court also should DENY the LaSalle Defendants' Motion to Dismiss (ECF No. 21) under Fed. R. Civ. P. 12(b)(2), (4) & (5), but GRANT in part the Motion under Fed. R. Civ. P. 12(b)(6). The Court should dismiss with prejudice Plaintiff's claims against the LaSalle Defendants for violations of Plaintiff's Eighth Amendment rights, nonfeasance, and misfeasance. The Court should DENY the Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) as to Plaintiff's claims against the LaSalle Defendants for deliberate indifference under the Fourteenth Amendment and gross negligence.

Further, the Court should, in the exercise of its discretion, extend the period for effecting service of the summons and original complaint upon the LaSalle Defendants to the date which is 30 days after the Court enters an Order Accepting these Findings, Conclusions, and Recommendation. The Court should direct the USMS to use due diligence to search for personal addresses for each of the LaSalle Defendants and to effect proper service before the expiration of the

extended deadline. The LaSalle Defendants should be granted a similar extension of time to file their answers.

**SO RECOMMENDED**.

August 30, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).